IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

CHANDLER N. WILKINSON,          )
                                )
        Plaintiff,              )
                                )
v.                              )          CASE NO. CV419-112
                                )
FA VINNEN & CO., GMBH & CO. KG; )
ZIM INTEGRATED SHIPPING; and    )
SCHIFFAHRTSGESELLSCHAFT "MERKUR  )
HORIZON," MBH & CO. KG;         )
                                )
        Defendants.            )
_____)

## O R D E R

Before the Court is Defendant Zim Integrated Shipping's Motion for Summary Judgment (Doc. 39) and Defendants FA Vinnen & Co. (GMBH & CO. KG) ("FA Vinnen") and Schiffahrtsgesellschaft "Merkur Horizon" MBH & CO. KG's ("Merkur Horizon") Motion for Summary Judgment (Doc. 42). For the following reasons, Defendant Zim Integrated's motion (Doc. 39) is **GRANTED** and Defendants FA Vinnen and Merkur Horizon's motion (Doc. 42) is **GRANTED**.

## BACKGROUND[1]

This case arises from an injury Plaintiff Chandler Wilkinson sustained while working as a stevedore aboard the M/V ZIM ISTANBUL ("Vessel"), a vessel owned and managed by Defendant Merkur Horizon and Defendant FA Vinnen (collectively, "Vessel Defendants").[2] (Doc. 26 at ¶¶ 2-6, 20; Doc. 42, Attach. 7 at 20; Doc. 52, Attach. 1 at 1.) On the day of the incident, February 20, 2018, the Vessel called at the Port of Savannah to load and discharge intermodal container cargo. (Doc. 51, Attach. 1 at 1-2.) Plaintiff, an "extra" for the International Longshoreman's Association Local 1475, was working for non-party Ports America Stevedores ("Ports America") loading and discharging cargo from the Vessel.[3] (Doc. 42, Attach. 1 at 58.)

---

[1] The relevant facts are taken principally from the Defendants' Statements of Undisputed Material Facts (Doc. 40; Doc. 44) and Plaintiff's responses thereto (Doc. 51, Attach. 1; Doc. 52, Attach. 1). Pursuant to Federal Rule of Civil Procedure 56(e) and Southern District of Georgia Local Rule 56.1, all material facts not controverted by specific citation to the record are deemed admitted, unless otherwise inappropriate. Where the parties offer conflicting accounts of the events in question, this Court draws all inferences and presents all evidence in the light most favorable to Plaintiff. See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (citing Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)).

[2] Defendant Zim Integrated entered into a time charter agreement with Defendant FA Vinnen concerning the Vessel. (Doc. 52, Attach. 1 at 1; Doc. 39, Attach. 1 at 2.) Under the agreement, Zim paid for the costs of the Vessel's stevedoring operations. (Doc. 39, Attach. 1 at 6.) Zim did not join the Vessel Defendants' motion, but Zim has filed its own motion for summary judgment. (Doc. 39.)

[3] Plaintiff testified that, although he was employed by ILA Local 1475, he was not a member of the union because, to become a card member, a stevedore was required to work at least 700 hours. (Doc.

2

On the day of the incident, Plaintiff worked as a "deck stevedore" or "deckman" overseeing cargo operations between Bay 30 and Bay 34. (Id. at 14, 52.) Plaintiff worked alongside Chris Utley, a dock man, and John T. Meacham, III ("Tripp"), the "quarterback" of the Vessel. (Id. at 52, 55; Doc. 42, Attach. 2 at 6.) It rained consistently during Plaintiff's shift, but stopped raining around the time of the incident. (Doc. 42, Attach. 1 at 59-60.)

At approximately 8:00 P.M., a crane operator radioed Plaintiff and asked Plaintiff to check that a box was properly secured on top of another box. (Id. at 63, 96.) At the time Plaintiff received the crane operator's call, Plaintiff was standing in the well deck of the Vessel. (Id. at 68.) To check the box, which was approximately four or five boxes up from the deck floor, Plaintiff ascended from the well deck to the catwalk between Bay 30 and Bay 34. (Id. at 68-69, 71.) Plaintiff then stepped onto the outboard lashing platform above the catwalk.[4] (Id. at 69; Doc. 51, Attach. 1 at 3.) While standing on the lashing platform, Plaintiff stepped backwards with his left foot to look up at the

---

42, Attach. 1 at 13-14, 16-17.) At the time of his accident, Plaintiff had worked 640 hours. (Id. at 14.)

[4] The purpose of a lashing platform is to provide stevedores with a place to stand when engaged in lashing operations—that is, securing or detaching the cargo on the Vessel. See Calderon v. Offen, No. 07-61022-CIV, 2009 WL 3429771, at *1 (S.D. Fla. Oct. 20, 2009) ("A stevedore is not supposed to stand on the closed hatch cover on the [vessel] when engaged in lashing operations. Instead, there is a lashing platform designed for this purpose.").

3

subject box. (Doc. 42, Attach. 1 at 90.) As he stepped back, Plaintiff's left foot "came out from under [him]" and Plaintiff fell from the lashing platform to the catwalk. (Id. at 91.)

From the dock, Mr. Utley saw Plaintiff fall and radioed Mr. Meacham to attend to Plaintiff on the Vessel. (Doc. 42, Attach. 2 at 15.) When Mr. Meacham reached Plaintiff, Plaintiff told him that he "slipped and fell." (Doc. 42, Attach. 3 at 23.) As a result of the fall, Plaintiff sustained injuries to his back, including fractures to his L2, L3, and L4 vertebrae; L5-S1 bulging disc; and a left shoulder injury. (Doc. 42, Attach. 1 at 124, 129.)

On March 6, 2019, Plaintiff brought this action in the State Court of Chatham County, Georgia, seeking recovery for the injuries he sustained while working on the Vessel. (Doc. 1 at 16.) On May 16, 2019, Defendant FA Vinnen removed the action to this Court. (Id. at 1.) In turn, Plaintiff filed an amended complaint alleging that his injuries were the result of Defendants' negligence and seeking to recover under the Longshore and Harbor Workers' Compensation Act ("LSHWA"), 33 U.S.C. § 905(b). (Doc. 26 at ¶ 24; Doc. 51 at 2.) Specifically, Plaintiff alleges that Defendants negligently maintained the lashing platform from which Plaintiff fell because Defendants permitted grease to accumulate on the platform and Plaintiff slipped on the grease.[5] (Doc. 26 at ¶¶ 29-

_____

[5] In his amended complaint, Plaintiff also alleges that Defendants were negligent by (1) failing to provide a non-skid surface on the catwalk and (2) allowing "an open and unguarded hatch cover in an

31.) Now, Defendants have filed motions for summary judgment on Plaintiff's claims. (Docs. 39, 42.)

## STANDARD OF REVIEW

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

---

area of the [V]essel that could subject longshoremen like Plaintiff to serious fall injuries." (Doc. 26 at ¶¶ 29-30.) In his response to Defendants' motions for summary judgment, however, Plaintiff does not rely on these allegations in arguing that summary judgment is inappropriate. Accordingly, the Court will not address Plaintiff's allegations that Defendants' were negligent by failing to provide a non-skid surface or by allowing the hatch cover to remain open and unguarded. See Edmondson v. Bd. of Trustees of Univ. of Ala., 258 F. App'x 250, 253 (11th Cir. 2007) (citing Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

5

will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323, 106 S. Ct. at 2553. The burden then shifts to the nonmoving party to establish, by going beyond the pleadings, that there is a genuine issue concerning facts material to its case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. Matsushita, 475 U.S. at 587-88, 106 S. Ct. at 1356. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id., 475 U.S. at 586, 106 S. Ct. at 1356. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more

than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

## ANALYSIS

I.  DEFENDANTS FA VINNEN AND MERKUR HORIZON'S MOTION FOR SUMMARY JUDGMENT

Vessel Defendants contend that they are entitled to summary judgment on Plaintiff's negligence claims. (Doc. 43 at 1.) Section 905(b) of the LHWCA, 33 U.S.C. §§ 901-950, authorizes suits by longshoremen injured due to the negligence of a shipowner or charterer. The Supreme Court, however, has significantly narrowed the duties a shipowner or charterer owes to longshoremen under the LHWCA. See Scindia Steam Nav. Co., Ltd. v. De Los Santos, 451 U.S. 156, 164-72, 101 S. Ct. 1614, 1620-25, 68 L. Ed. 2d 1 (1981). These duties, now known as the Scindia duties, include (1) the turnover duty, (2) the active control duty, and (3) the duty to intervene. Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 98, 114 S. Ct. 2057, 2063, 129 L. Ed. 2d 78 (1994).

In this case, the only Scindia duty at issue is the turnover duty. (Doc. 51 at 15.) With respect to the turnover duty,

> [a] vessel must exercise ordinary care under the circumstances to turn over the ship and its equipment and appliances in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care

7

to carry on cargo operations with reasonable safety to persons and property.

Howlett, 512 U.S. at 98, 114 S. Ct. at 2063 (citation and internal quotations omitted). As a corollary to this duty, the vessel must also

> warn the stevedore of any hazards on the ship or with respect to its equipment, so long as the hazards are known to the vessel or should be known to it in the exercise of reasonable care, and would likely be encountered by the stevedore in the course of his cargo operations, are not known by the stevedore, and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.

Id. at 98-99, 114 S. Ct. at 2446 (citation and internal quotations omitted). "The duty to warn, however, is narrow. It does not include dangers which are either (1) open and obvious, or (2) which a reasonable competent contractor should anticipate encountering." In re Knudsen, 710 F. Supp. 2d 1252, 1274 (S.D. Ala. 2010); see also Howlett, 512 U.S. at 98-99, 114 S. Ct. at 2063.

Plaintiff alleges that the Vessel Defendants breached their turnover duty by turning the Vessel over to the stevedores with a hazardous condition. (Doc. 51 at 16.) Namely, Plaintiff alleges that there was grease on the lashing platform from which Plaintiff fell and that the Vessel Defendants failed to warn Plaintiff about the alleged grease. (Id. at 19.) In his brief, Plaintiff also suggests that the Vessel Defendants violated the turnover duty

because the Vessel's crew failed "to conduct a proper pre-turnover inspection."[6] (Id. at 19, 21.)

The Vessel Defendants argue that they are entitled to summary judgment on Plaintiff's negligence claims because Plaintiff cannot establish that grease was on the platform when Plaintiff fell or that the Vessel was turned over with grease on the platform. (Doc. 43 at 6.) The Vessel Defendants further contend that, even if grease was on the platform at the time the Vessel was turned over, they had no duty to warn Plaintiff about the grease. (Id. at 13.)

The Court finds that summary judgment is warranted on Plaintiff's claims against the Vessel Defendants for two reasons. First, Plaintiff has failed to create a dispute of material fact that the Vessel Defendants turned the Vessel over in an unsafe condition. Specifically, Plaintiff has not offered any evidence indicating that grease was on the platform at the time he fell or that the grease was on the platform at the time the Vessel was turned over to the stevedores. Second, even if there was grease on the platform, the Vessel Defendants had no duty to warn Plaintiff

_____

[6] Plaintiff also suggests that the Vessel Defendants violated the turnover duty by turning the Vessel over to the longshoremen with a lashing platform that did not have an upward beveled edge and by failing to install "fall protection" in the areas where longshoremen were working. (Doc. 51 at 22.) Besides Plaintiff's general assertions that Defendants violated the turnover duty in the above instances, Plaintiff provides no further argument about the lashing platform's edge or any "fall protection." Accordingly, the Court will only address Plaintiff's argument that Defendants violated the turnover duty turning the Vessel over with grease on the lashing platform.

about the grease because Plaintiff, as a reasonably competent stevedore, should have anticipated grease in working areas of the Vessel. The Court will address each reason in turn.

A.      Turnover Duty of Safe Condition

The first question as it relates to the turnover duty is whether the Vessel Defendants turned over the Vessel in a condition under which Plaintiff could do his work with reasonable safety. Washington v. Nat'l Shipping Co. of Saudi Arabia, 374 F. Supp. 3d 1339, 1352 (S.D. Ga. 2019). Plaintiff argues that the Vessel Defendants violated the turnover duty of safe condition because the Vessel Defendants turned the Vessel over with grease on the lashing platform from which Plaintiff fell. (Doc. 51 at 22.)

As an initial matter, Plaintiff's contention that he slipped on grease is unsupported. Plaintiff has no personal knowledge about whether there was grease on the platform. During his deposition, the following exchange occurred:

> Q.   Okay. So in order to get a good look at it you had to move your foot 6 inches back and what happened then? What did your foot make contact with?
>
> A.   I couldn't tell you. I just know I - I put my foot back and it came out from under me. I hit the floor.

(Doc. 42, Attach. 1 at 91.) Plaintiff further testified that he did not look at the platform after he fell to see if there was grease:

> Q. All right. So after hitting -- and sorry if that's an insensitive way of putting it. Hitting the deck

of the catwalk you did not go back onto the platform
to see what was up there?

A. No Sir. . . .

(Id. at 110.) From the Court's perspective, Plaintiff is simply assuming that, because his foot slipped out from under him, he must have slipped on grease. Plaintiff's speculation alone is not enough to support his claim that grease was on the platform when Plaintiff fell.

The only evidence Plaintiff offers to support his contention that grease was on the platform is (1) his testimony that Tripp Meacham told him there was grease all over the Vessel; (2) his fiancée's affidavit stating that she saw grease on the seat of Plaintiff's pants after the accident; and (3) Chris Utley's testimony that lashers told him there was more grease on the Vessel than usual. (Doc. 51 at 22-23.) This evidence, however, only demonstrates that grease existed somewhere on the Vessel, but the evidence does not create a dispute of fact that grease was on the subject platform when Plaintiff fell.

First, Plaintiff testified that Mr. Meacham, the quarterback the night of the incident, told Plaintiff that there was water and grease all over the Vessel. (Doc. 42, Attach. 2 at 92.) Mr. Meacham testified, however, that he did not recall saying anything to Plaintiff about grease:

Q. . . . Do you recall making any statements to
[Plaintiff] about you seeing grease on either the
platform he fell or in the area?

11

A.    I don't recall.

Q.    You don't recall one way or the other?

A.    I don't recall. I just know I, I remember—I remember
      seeing wetness. I remember seeing it wet there. But
      I never made any statement to—the only statement I
      made to [Plaintiff] was it was wet.

(Doc. 41, Attach. 3 at 32.) Thus, Mr. Meacham's testimony does not

support Plaintiff's contention that grease was on the platform

when Plaintiff fell.[7]

Second, Plaintiff argues that the grease on his pants

evidences that grease was on the platform. (Doc. 51 at 22-23.)

Plaintiff did not himself see the grease on his pants. (Doc. 42,

Attach. 1 at 113-114.) Instead, Plaintiff relies on his fiancée's

affidavit, wherein she stated that "[Plaintiff's] pants definitely

had grease on them, especially the seat of his pants . . . ." (Doc.

51, Attach. 4 at ¶ 9.) However, according to Chris Utley, it is

common for a stevedore to get grease on his clothing:

      . . . I can go get you my clothes out of my truck right
      now that I wear up on the ship and every bit of them has
      got grease on them. It don't matter what you do. You
      can't avoid it. . . . You're better off just walking up
      there, go up to the jack, get you a handful of grease
      and rub it across your belly, because it's gonna happen
      whether you like it or not.

---

[7] The Court notes that both Plaintiff and Mr. Meacham testified
that the Vessel was wet from rain on the day of the incident. (Doc.
42, Attach. 1 at 106; Doc. 41, Attach. 3 at 32.) Additionally,
Ports America's incident report states that the suspected cause of
Plaintiff's fall was the "wet surface of the deck." (Doc. 42,
Attach. 1 at 199.) Considering the above evidence, it appears just
as likely that rain, rather than grease, could have accumulated on
the platform and caused Plaintiff to slip.

(Doc. 42, Attach. 2 at 24.) Although it is likely, based on Mr. Utley's testimony, that Plaintiff had grease on his pants from his work on the Vessel, any assertion that the grease came from the subject platform is purely speculative. See <u>Kalogeros v. Brasileiro</u>, 446 F. Supp. 175, 177 (S.D.N.Y. 1978) ("[T]he only evidence to support plaintiff's claim is that he saw oil on his clothes sometime after the accident. But neither plaintiff nor anyone else ever saw oil on the step on which plaintiff slipped. A finding of negligence cannot be based on speculation.").

Lastly, Plaintiff's reliance on Mr. Utley's testimony about statements made by lashers is also unavailing. Mr. Utley testified that, on the night of the incident, "the lashers came down and told [him] there's more grease up there than normal." (Doc. 42, Attach. 2 at 24.) As an initial matter, Mr. Utley's testimony regarding what the lashers said cannot be considered as evidence because his testimony is hearsay. See <u>Verna v. Public Health Trust of Miami-Dade Cty.</u>, 539 F. Supp. 2d 1340, 1350 (S.D. Fla. 2008) (citing <u>Macuba v. Deboer</u>, 193 F.3d 1316, 1322 (11th Cir. 1999)). "Hearsay statements, even if stated in a deposition, cannot be considered on a motion for summary judgment." <u>Id.</u>

However, even if the Court did consider Mr. Utley's testimony, Mr. Utley also testified that he never actually went onto the ship that night. (Doc. 42, Attach. 2 at 18.) Accordingly, Mr. Utley has no personal knowledge about how much grease was on the Vessel.

Similar to Plaintiff's other evidence, the lashers' statement to Mr. Utley only supports an assumption that there was grease somewhere on the Vessel, but it does not evidence Plaintiff's contention that grease was on the subject platform.

Considering neither Plaintiff nor anyone else saw grease on the platform before or after Plaintiff fell, Plaintiff's contention that grease was on the platform and caused him to slip is purely speculation. Without more, Plaintiff cannot support his claim that the Vessel Defendants violated their duty to turn the Vessel over in a safe condition.[8] See Hampton v. Broadway Maritime Shipping Co., Ltd., No. C-96-0464, 1997 WL 102500, at *3 (N.D. Cal. Feb. 25, 1997) (concluding that the vessel did not violate the turnover duty because "plaintiff offer[ed] no evidence, not even his own testimony, which unequivocally states that there was grease on the ladder at the time of his accident"); Patil v. Amber Lagoon Shipping GmbH & Co., -- F. Supp. 3d --, 2020 WL 7245069, at *5 (E.D. La. Dec. 9, 2020) (granting summary judgment on longshoreman's claim that the vessel violated its turnover duty where the longshoreman allegedly slipped on grease because the longshoreman could not prove the substance existed where he

---

[8] To the extent that Plaintiff argues that the inadequate lighting of the Vessel created a hazardous condition, this argument is also unavailing. See Chapman v. Bizet Shipping, S.A., 936 F. Supp. 982, 986 (S.D. Ga. 1996) ("Moreover, '[t]he duty to provide adequate lighting is imposed by law on the stevedore.' ") (quoting Landsem v. Isuzu Motors, Ltd., 534 F.Supp. 448, 451 (D. Ore. 1982), aff'd, 711 F.2d 1064 (9th Cir. 1983)).

slipped); <u>Whittaker v. Hapag-Lloyd A.G.</u>, 995 F.2d 1065, 1065 (4th Cir. 1992) (affirming summary judgment where longshoreman slipped on a wet or greasy spot, but did not observe any grease, because the longshoreman "relie[d] upon unsupported speculation in claiming his fall was caused by oil or grease").

Even assuming Plaintiff could show that grease was on the platform when he fell, Plaintiff has not provided any evidence that the grease was on the platform at the time the Vessel Defendants turned the Vessel over to the stevedores. Importantly, " ' a breach of the turnover duty must occur at the moment of turnover.' " <u>Washington v. Nat'l Shipping Co. of Saudi Arabia</u>, 374 F. Supp. 3d 1339, 1354 (S.D. Ga. 2019) (quoting <u>Robie v. S. Marine Const. Co.</u>, No. CIV.A. 10-7-DLB-CJS, 2013 WL 188577, at *10 (E.D. Ky. Jan. 17, 2013)); <u>see also</u>, <u>e.g.</u>, <u>Howlett</u>, 512 U.S. at 98, 114 S. Ct. at 2057 (turnover duty concerns condition of equipment at "the commencement of stevedoring operations").

Plaintiff suggests that grease on the lashing platform came from the Vessel's crew. (Doc. 51 at 24-25.) Plaintiff reasons that the grease must have been on the platform prior to turnover because greasing the Vessel's equipment is the responsibility of the crew and the crew did not grease any equipment after stevedoring operations began. (Doc. 51 at 25.) In the Court's view, Plaintiff's argument is entirely speculative because Plaintiff has not

provided any evidence to support his assertion that grease was present at the time the Vessel was turned over.

Plaintiff testified that he had no personal knowledge of how long grease was on the platform:

> Q.   . . . Along the same lines do you have any personal knowledge as to how long that grease that was supposedly up on the platform had been up there?
>
> A.   I have no idea.

(Doc. 42, Attach. 1 at 148.) To support his contention that grease was on the platform when the Vessel was turned over, Plaintiff cites the testimony of Michael Vinnen, the representative for FA Vinnen, and John Tirel, a marine surveyor and Plaintiff's expert. (Doc. 51 at 24-25.) However, Vinnen and Tirel's testimony only highlight that it is just as likely, if not more likely, that grease accumulated on the subject platform during stevedoring operations rather than before the turnover.

In his expert report, Tirel opined that there are several ways in which grease can accumulate on a lashing platform:

> 1. Grease can be dropped by crew members maintaining the turnbuckles;
>
> 2. Grease can be forced to fall from the threads when operating the turnbuckle;
>
> 3. Grease can sympathetically be transferred from the thread to deck surface when not in use and laid down; [or]
>
> 4. Grease can also fall from gantry cranes at the ports the vessel called.

16

(Doc. 42, Attach. 4 at 95.) Tirel testified that this list, however, was not exhaustive and that he could not definitively say that the alleged grease on the platform came from one of those sources. (Doc. 42, Attach. 4 at 31 (Q. ". . . [Y]ou can't say definitively, sitting here today, that any one of these scenarios, 1 through 4, is, in fact, the source of the alleged oil on the platform?" A. "Not definitively, no.")). From the Court's perspective, Tirel opined generally on the different ways that grease can accumulate on a Vessel; but, Tirel does not offer any evidence that the alleged grease in this case appeared on the platform prior to turnover.[9]

Similarly, Mr. Vinnen's testimony offers no support for Plaintiff's contention that grease existed on the platform at the time of turnover. Mr. Vinnen testified that the Vessel's crew does not grease or perform maintenance on lashing materials during stevedoring operations. (Doc. 42, Attach. 7 at 61.) From this testimony, Plaintiff reasons that the grease must have appeared on the lashing platform while the crew was performing "pre-turnover" maintenance. (Doc. 51 at 25.) However, Mr. Vinnen also testified that the Vessel's crew routinely inspects the deck to make certain that there is no grease on it (Doc. 42, Attach. 7 at 45-46), and

---

[9] Plaintiff's reliance on Tirel's testimony is also unconvincing considering that several of Tirel's potential sources for grease on a lashing platform would occur during stevedoring operations after the Vessel was turned over. (Doc. 42, Attach. 4 at 95.)

there is no evidence on the record that the crew discovered grease on the subject lashing platform. Likewise, Mr. Vinnen did not testify as to how often the crew greased the lashing materials or whether the crew had recently greased the lashing materials near the subject lashing platform. In sum, nothing from Mr. Vinnen's testimony indicates that the Vessel's crew recently greased the lashing materials on the platform from which Plaintiff fell or that there is any reason to believe grease was on the platform prior to turnover.

Neither Mr. Vinnen's testimony nor John Tirel's testimony support a finding that the alleged grease is attributable to the Vessel's crew or to pre-turnover operations. See Hampton, 1997 WL 102500, at *3 (granting summary judgment where the plaintiff offered no evidence "to demonstrate that such a condition, if it did exist, could be attributed to [] the shipowner"). As noted above, "to visit liability upon a vessel under the turnover duty, it is not enough to point toward a hazardous condition." Washington, 374 F. Supp. 3d at 1356. Plaintiff must also introduce evidence that the hazard was present at the time the Vessel was turned over to the stevedores. See Clark v. Bothelho Shipping Corp., 784 F.2d 1563, 1566 (11th Cir. 1986) (affirming directed verdict for the operator of the ship where "[n]o evidence existed to indicate that the grease spot was on the deck before stevedoring operations began"). Plaintiff has failed meet that burden here.

Because Plaintiff's evidence is insufficient to support a finding that grease was on the platform or that grease was on the platform before stevedoring operations began, the Court finds that the Vessel Defendants did not violate their turnover duty of safe condition.

  B. <u>Turnover Duty to Warn</u>

  Even if Plaintiff could establish that grease was on the platform from which he fell, Plaintiff's evidence is insufficient to show that the Vessel Defendants violated the corollary duty to warn. As previously discussed, "[t]he duty to warn . . . is narrow [and] does not include dangers which are either (1) open and obvious, or (2) which a reasonable competent contractor should anticipate encountering." <u>In re Knudsen</u>, 710 F. Supp. 2d at 1274. In other words, the Vessel Defendants cannot be held liable for failing to warn Plaintiff, a reasonably competent stevedore, about a hazard that he should have anticipated. <u>Howlett</u>, 512 U.S. at 98-99, 114 S. Ct. at 2063 (stating that a vessel need not warn of hazards that would be "obvious to [or] anticipated by a competent stevedore in the ordinary course of cargo operations").

  In the Court's view, the presence of grease on a lashing platform is a hazard that Plaintiff should have anticipated. During his deposition, Plaintiff testified that it was common for him to see grease on the working areas of vessels:

> Q. Now, in the two or so years that you have worked as
> a stevedore . . . you have seen grease on the surfaces

of working areas on container ships before; have you
not?

A. Correct.

Q. So, you would say it's not uncommon for there to be
grease in those areas?

A. Correct.

(Doc. 42, Attach. 2 at 111.)

"Where a hazard exists, the question of negligence boils down
to whether 'an expert and experienced stevedore'—rather than an
'unskilled person[]'—could safely avoid the hazard." Troutman v.
Seaboard Atlantic Ltd., 958 F.3d 1143, 1147 (11th Cir. 2020)
(quoting Bjaranson v. Botelho Shipping Corp., Manila, 873 F.2d
1204, 1208 (9th Cir. 1989)). Here, Plaintiff could have safely
avoided slipping on any alleged grease. Although Plaintiff knew
that it was common for grease to get on working areas of the
Vessel, such as lashing platforms, and that the Vessel was wet
from rain, Plaintiff only "glanced" at the platform before taking
a step backwards. (Doc. 42, Attach. 1 at 89-90.) To avoid slipping,
Plaintiff could have more thoroughly surveyed the platform for
slippery substances before stepping backwards.

In short, grease on a lashing platform is not of such a nature
that competent stevedore like Plaintiff could not have "be[en]
able by the exercise of reasonable care to carry on [his]
operations with reasonable safety." Patil, -- F. Supp. 3d --, 2020
WL 7245069, at *5 (citing Scindia, 451 U.S. at 167, 101 S. Ct.

1614) (granting summary judgment on longshoreman's claim that the vessel violated its turnover duty where the longshoreman allegedly slipped on grease, in part, because the longshoreman, as an expert contractor, should have recognized the hazard); see also Troutman v. Seaboard Atlantic Ltd., 958 F.3d 1143, 1148 (11th Cir. 2020) (internal quotation marks omitted) (citing Morris v. Compagnie Mar. Des Chargeurs Reunis, S.A., 832 F.2d 67, 71 (5th Cir. 1987)); Romero v. Cajun Stabilizing Boats Inc., 307 F. App'x 849, 851 (5th Cir. 2009) (affirming summary judgment on longshoreman's claim that the vessel violated the turnover duty because the grease the longshoreman slipped on "was open and obvious. He knew that slippery anti-corrosive compounds are common in the rudder rooms of lifts [sic] boats such as the [vessel], and he was aware that the vessel was wet from the rain"). Accordingly, the Court finds that the Vessel Defendants did not violate the turnover duty to warn. As a result, the Vessel Defendants' motion for summary judgment (Doc. 42) is **GRANTED.**[10]

---

[10] Plaintiff also suggests that the Vessel Defendants violated the turnover duty to warn by failing to conduct a proper "pre-turnover inspection." (Doc. 51 at 19.) Plaintiff suggests that, had the Vessel's crew properly inspected the Vessel prior to turnover, the crew would have found grease on the subject lashing platform. (Id.) Plaintiff further argues that because the crew failed to perform a proper inspection, the Vessel Defendants' failed to warn Plaintiff about a hazard they should have known about. (Doc. 51 at 21.) Even assuming, without deciding, that the crew failed to conduct a proper inspection of the Vessel, the hazard—grease on a lashing platform—is one that should be "anticipated by [Plaintiff] if reasonably competent in the performance of his work." Howlett, 512 U.S. 98-99, 114 S. Ct. at 2063. Accordingly, the Vessel

## II.  DEFENDANT ZIM INTEGRATED'S MOTION FOR SUMMARY JUDGMENT

Defendant Zim Integrated, the time charterer of the Vessel, also seeks summary judgment on Plaintiff's claims. (Doc. 39.) Zim argues that, as a time-charter, it "did not undertake any duties that generate Scindia liability given its narrow role as time charterer" and that it did not have control over the Vessel's cargo operations. (Id. at 10, 14.) Zim contends that the absence of control over the Vessel's cargo operations precludes it from being liable for any alleged negligence by the Vessel or its crew, absent an agreement to the contrary. (Id. at 11.)

The Eleventh Circuit has held that "[a] time charterer who has no control over a vessel assumes no liability for negligence of the crew or unseaworthiness of the vessel absent an agreement to the contrary." Hayes v. Wilh Wilhelmsen Enters., Ltd., 818 F.2d 1557, 1559 (11th Cir. 1987) (citing Mallard v. Aluminum Co. of Canada, Ltd., 634 F.2d 236, 242 n.5 (5th Cir. 1981), cert. denied, 454 U.S. 816, 102 S. Ct. 93, 70 L. Ed. 2d 85 (1981)). In his response to Zim's motion, Plaintiff agrees that "[r]eview of the time charter agreement in this action indicates that Zim did not have a contractual right to actively engage in cargo operations . . . ." (Doc. 52 at 15.) Plaintiff further concedes that "[l]iability to the injured longshoreman is premised on the 'active

---

Defendants did not violate their turnover duty to warn based on their allegedly inadequate pre-turnover inspection.

involvement of the time charterer in the cargo operations.' " (Doc. 52 at 15 (quoting Miller v. Navalmar (UK) Ltd., 685 F. App'x 751, 755 (11th Cir. 2017)). Because Plaintiff and Zim agree that Zim assumed no control over the Vessel's cargo operations, the Court concludes that Zim cannot be held liable for Plaintiff's injuries. Therefore, Zim's motion for summary judgment (Doc. 39) is **GRANTED**.

CONCLUSION

For the foregoing reasons, Defendant FA Vinnen and Defendant Merkur Horizon's motion for summary judgment (Doc. 42) is **GRANTED** and Defendant Zim Integrated's motion for summary judgment (Doc. 39) is **GRANTED**. As a result, the Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 18th day of March 2021.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA